AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

Sep 18 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY     s/ carolinalopez     DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)  Case No.  23-mj-08715-LR
White Apple iPhone )
Model:12 Pro Max )
With no identifying numbers or features )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Thomas Nava incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Border Patrol Agent Thomas Nava
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means)*.

Date: 09/18/2023

_____
Judge's signature

City and state: El Centro, California      HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
Printed name and title

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     White Apple iPhone
Model: 12 Pro Max
With no identifying numbers or features
Seized from Victor Alfonso VERGEL
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 11, 2023, up to and including September 11, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Thomas Nava, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** White Apple iPhone
Model: 12 Pro Max
With no identifying numbers or features
Seized from Victor Alfonso VERGEL
**(Target Device #1)**

**A-2:** Gold Motorola
Model: Unknown
With no identifying numbers or features
Seized from Isaias VAZQUEZ-Lopez
**(Target Device #2)**

**A-3:** Blue Oneplus Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Jose Andres GARRIDO-Pineda
**(Target Device #3) (collectively "Target Devices")**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Victor Alfonso VERGEL (VERGEL) for transportation of illegal aliens Jose Andres GARRIDO-Pineda (GARRIDO) and Isaias VAZQUEZ-Lopez (VAZQUEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from VERGEL and the Material Witnesses on or about September 10, 2023, incident to the arrest of VERGEL and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland

1

Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since January 29, 2021, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 23-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into

the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example,

phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

4

## FACTS SUPPORTING PROBABLE CAUSE

10. On September 10, 2023, Border Patrol Agents assigned to the El Centro Sector Intelligence Unit were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility. The agents were dressed in plain clothes and operating unmarked service vehicles to blend in with the public and covertly search for criminal activity. The agents involved in today's event were Supervisory Border Patrol Agent-Intelligence (SBPA-I) M. Clinton and Border Patrol Agent-Intelligence (BPA-I) L. Heipt. These agents are members of the Field Intelligence Team (FIT).

11. SBPA-I M. Clinton observed a blue Kia Forte (Kia) bearing California license plates, parked at a business establishment located at the 2500th block of Rockwood Avenue, Calexico, California. SBPA-I M. Clinton observed that the Kia was parked with the headlights on in the southwest corner of the parking lot away from all other vehicles. SBPA-I M. Clinton ran records checks in Department of Homeland Security (DHS) databases on the Kia and discovered that it was registered out of Long Beach, California. It should be noted that Long Beach is approximately two hundred thirty-eight miles away from Calexico in Los Angeles County. Further record checks in DHS systems on the Kia revealed that it had no recent USBP Checkpoint or International Port of Entry crossings through the Calexico Port of Entry. This fact is important because it ruled out the possibility of the Kia being from the local area or being a routine commuter. While conducting static surveillance on the Kia. SBPA-I M. Clinton observed a male, wearing a bright green hooded sweatshirt with the hood up, drive the Kia from the empty portion of the lot to a parking stall near the entrance of the business. SBPA-I Clinton observed the male enter the business and return a few moments later without purchasing anything.

12. The male then walked to the Kia and entered the backseat of the Kia. After a few moments, the male entered the driver seat of the Kia and returned to the empty portion of the lot. SBPA-I M. Clinton relayed his observations to BPA-I L. Heipt and continued conducting static surveillance as well as research on the Kia and the individuals associated to it. SBPA-I M. Clinton ran record checks on Victor Alfonso VERGEL (VERGEL), who

had crossed the Kia into the United States from Mexico near San Diego, California the day prior. SBPA-I M. Clinton discovered that VERGEL was a previously arrested for narcotics charges in 2017 & 2022. SBPA-I M. SBPA-I Clinton obtained a passport photo of VERGEL and compared it to the person in the Kia. SBPA-I Clinton strongly believed that VERGEL was the person he was currently watching.

13. While conducting surveillance, the driver of the Kia, later determined to be VERGEL, was the only individual observed in the Kia. As both SBPA-I M. Clinton and BPA-I L. Heipt continued conducting surveillance on the Kia, they observed VERGEL remain parked in the same parking space for approximately one hour. VERGEL was observed smoking marijuana inside and outside the vehicle.

14. VERGEL was observed exiting and entering the front seat and rear seat of the Kia, and pacing around the Kia while on the phone as if he was waiting for instructions. After approximately one hour, SBPA-I M. Clinton and BPA-I L. Heipt watched as the Kia exited the parking lot and travelled towards Cole Road. As the Kia approached Cole Road, SBPA-I M. Clinton, and BPA-I L. Heipt lost visual of the Kia due to heavy afternoon traffic. SBPA-I M. Clinton and BPA-I L. Heipt split up to relocate the Kia. At this time, SBPA-I M. Clinton firmly believed that the Kia was travelling to a nearby location to pick up or receive illegal aliens and would then utilize Highway 111 to travel to Interstate 8 as an egress route from the Imperial Valley. SBPA-I M. Clinton positioned his unmarked service vehicle at the intersection of Heber Road and Highway 111 and began observing the traffic travelling northbound towards Interstate 8.

15. At approximately 7:22 p.m., while observing the northbound traffic on Highway 111, SBPA-I M. Clinton watched as the Kia passed his location and continued travelling towards Interstate 8. As suspected, the Kia had travelled to a nearby location and was now leaving the area. As the Kia passed, SBPA-I M. Clinton observed that there was now a front seat passenger. SBPA-I M. Clinton relayed his observation to BPA-I L. Heipt and initiated mobile surveillance on the Kia. SBPA-I M. Clinton kept constant visual on

1 the Kia as it travelled north on Highway 111, merged onto the westbound lanes of Interstate
2 8, and began travelling towards San Diego, California.

3     16.    Based on the plain view observations of narcotics use, the out-of-town vehicle
4 with no prior travel in the area, the border nexus with VERGEL and his link to the Kia,
5 VERGEL's known criminal history, the quick exit from the parking lot and then retuning
6 northbound with another passenger, FIT Agents firmly believed they were witnessing a
7 smuggling attempt. FIT Agents requested an El Centro Border Patrol Agent operating a
8 fully marked Border Patrol service vehicle to assist with a vehicle stop to determine the
9 citizenship of all occupants within the Kia. Border Patrol Agent (BPA) B. Belk responded
10 to the area and positioned her fully marked service vehicle in the median of Interstate 8.

11     17.    After passing BPA B. Belk's position, SBPA-I M. Clinton informed her that
12 the Kia was in front of his unmarked service vehicle. At this time, SBPA-I M. Clinton
13 positioned his unmarked service vehicle beside the Kia and observed that there appeared
14 to be an additional passenger in the rear seat as well. SBPA-I M. Clinton repositioned his
15 unmarked service vehicle behind the Kia, activated the emergency lights and sirens of his
16 unmarked service vehicle and initiated a vehicle stop on the Kia. The Kia slowed down,
17 pulled over and came to a complete stop. Uniformed Agents in marked vehicles quickly
18 arrived and provided backup on the stop. BPA B. Belk, who was wearing a Border Patrol
19 rough duty uniform with Border Patrol markings and insignia fully visible, approached the
20 front seat passenger, later identified as Isaias VAZQUEZ-Lopez (VAZQUEZ), identified
21 herself as a Border Patrol Agent and questioned VAZQUEZ as to his citizenship. BPA C.
22 Acevedo approached the rear seat passenger, later identified as Jose Andres GARRIDO-
23 Pineda (GARRIDO), identified himself as a Border Patrol Agent and questioned him as to
24 his citizenship.

25     18.    While BPA B. Belk and BPA C. Acevedo questioned VAZQUEZ and
26 GARRIDO, SBPA-I M. Clinton, who had Border Patrol markings and insignia fully
27 visible, approached the driver, later identified as Victor Alfonso VERGEL (VERGEL) and
28 questioned him as to his citizenship. VERGEL stated that he is a United States citizen.

7

VAZQUEZ and GARRIDO admitted to being in the United States illegally. VAZQUEZ and GARRIDO admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. VERGEL was placed under arrest for Alien Smuggling. VAZQUEZ and GARRIDO were placed under arrest for Illegal Entry. All three individuals were transported to the Calexico Border Patrol Station.

19. On September 10, 2023, SBPA-I M. Clinton and Intelligence Research Specialist R. Schwartz conducted a recorded custodial interview with Victor Alfonso VERGEL regarding his involvement in alien smuggling. Agent Clinton advised VERGEL of his Miranda Rights. VERGEL acknowledged his rights and elected to answer questions without the presence of an attorney. VERGEL stated he was born in Montclair, California. VERGEL lives in Corona, CA with his adult sister. VERGEL graduated high school in 2013 and attended a few semesters of college. He currently works in construction and earns $200 per day doing construction work.

20. Regarding today's smuggling event, VERGEL initially gave a false story about him travelling to Calexico for work and said was supervising construction and building material delivery to a house in Calexico and said he gave two strangers a ride towards Ocotillo, California. VERGEL subsequently recanted and admitted to alien smuggling. VERGEL stated he saw an ad on the Inland Empire Craigslist asking for drivers. VERGEL contacted the ad poster and agreed to transport illegal aliens for a fee of $800. VERGEL took his girlfriend's car and drove to a business establishment in Calexico. VERGEL said his girlfriend is not involved and he told her he was going to work and to a casino. VERGEL then received instructions from an unknown person via WhatsApp and was instructed where to pick up the aliens. VERGEL claimed he drove to a bank in Calexico and picked up the aliens. VERGEL said he knew they were illegal aliens. VERGEL said this was his first-time smuggling aliens. VERGEL admitted he was smoking marijuana today and said he purchased the marijuana at a dispensary.

21. Material Witness Jose Andres GARRIDO-Pineda stated that he was going to pay $8,000 dollars to be smuggled into the United States. Material Witness Isaias

8

VAZQUEZ-Lopez stated that he was going to pay $7,000 Dollars to be smuggled into the United States.

22.     During a search incident to the arrest of VERGEL, one white Apple iPhone (Target Device #1) was located in the center console area by BPA-I L. Heipt. VERGEL claimed ownership of the iPhone and it was seized as evidence. During a search of the Material Witnesses, BPA-I L. Heipt found one Gold Motorola (Target Device #2) on the front seat belonging to VAZQUEZ. BPA C. Acevedo found a blue OnePlus smartphone (Target Device #3) on GARRIDO's person. VAZQUEZ and GARRIDO claimed ownership of their respective cellphones and they were seized as evidence.

23.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on August 11, 2023, up to and including September 11, 2023, the day after the arrest of VERGEL and the Material Witnesses.

## METHODOLOGY

24.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

## CONCLUSION

27. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that VERGEL and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Thomas Nava Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of September, 2023.

_____ 1:51 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

11

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:** White Apple iPhone
Model: 12 Pro Max
With no identifying numbers or features
Seized from Victor Alfonso VERGEL
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Gold Motorola
             Model: Unknown
             With no identifying numbers or features
             Seized from Isaias VAZQUEZ-Lopez
             **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**	Oneplus Cellphone
	Model: Unknown
	With no identifying numbers or features
	Seized from Jose Andres GARRIDO-Pineda
	**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 11, 2023, up to and including September 11, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.